

FILED
April 27, 2015
Third Court of Appeals
Jeffrey D. Kyle
Clerk

Case No. 03-14-00479-CV

IN THE THIRD COURT OF APPEALS

RECEIVED
APR 2 7 2015
THIRD COURT OF APPEALS
JEFFREY D. KYLE

KIM BLACKSTON CLOGSTON, Appellant

vs.

CURTIS P. CLOGSTON, Appellee

Appeal from Cause No 05-D-540
From the 421st Judicial District Court
Of Caldwell County, Texas

APPELLEE'S BRIEF

AND

REQUEST FOR ORAL ARGUMENT

Curtis P Clogston
*Pro se*
1348-A Hwy 123 S.
San Marcos, Texas 78666
Phone: 512-751-0111
Fax: 512-582-8428
Email: cpc@pfq.com

1

# IDENTITY OF PARTIES AND COUNSEL

**APPELLANT**
Kim Blackston Clogston (*this is an error in appellant's brief — appellant's name was ordered to be in the court below "Kim Clogston Blackson"*)

**APPELLEE**
Curtis P. Clogston

**PETITIONER'S COUNSEL AT TRIAL**
David K. Sergi
State Bar No 18036000
P.O. Box 887, San Marcos, Texas 78666
Tel: 512-392-5010
Fax: 512-392-5042
Email: david@sergilaw.com

**RESPONDENT'S ATTORNEY AT TRIAL**
Henry Newton Bell, III
State Bar No 02095000
6000 N. Lamar Blvd. Ste. 210
Austin, Texas 78752
Tel: 512-458-2233
Fax: 512-458-2354

**APPELLANT'S COUNSEL ON APPEAL**
David K. Sergi
State Bar No 18036000
P.O. Box 887, San Marcos, Texas 78666
Tel: 512-392-5010
Fax: 512-392-5042
Email: david@sergilaw.com

**APPELLEE'S ATTORNEY ON APPEAL**
Appellee is *pro se,* as his attorney Henry Newton Bell, III, has abandoned him without making a motion to withdraw

# TABLE OF CONTENTS

Identity of Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Index of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Statement of the Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Statement Regarding Oral Argument . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Issues Presented . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Summary of the Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Arguments and Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Prayer. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Certificate of Compliance. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Exhibit A *(www.pfq.com web page).* . . . . . . . . . . . . . . . . . . . . . . . . . 14

Exhibit B *(www.pfq.com/Malpractice.asp web page)* . . . . . . . . . . . . . . 15

# INDEX OF AUTHORITIES

**Cases**

*Morales v. Morales*, 195 S.W.3d 188 (Tex.App.-San Antonio, 2006, denied).

**Statutes**

Tex. Fam. Code §9.003(a).

Tex. Fam. Code §9.003(b).

Tex. CPRC §16.003(a).

Tex. CPRC §16.051.


WIKIPEDIA, the free encyclopedia, en.wikipedia.org/wiki/domain_name (visited June 3, 2014).

ENCYCLOPEDIA BRITANNICA, http://www.britannica.com/EBchecked/topic/690679/Web-site.

## STATEMENT OF THE CASE

This is a direct appeal from civil cause number 05-D-540 in the 421st Judicial District of Caldwell County. The so-called Motion to Enforce of Appellant, Kim Blackston Clogston [*sic*][1] was actually an action to change the terms of a final judgment signed and filed on October 18, 2006. The suit is barred by the two-year limitations period in Family Code §9.003, and also by Tex. CPRC §16.003(a) (two-year statute of limitations), and Tex. CPRC 16.051 (residual four-year statute of limitations). Furthermore, Appellant's action was barred because the Court's plenary jurisdiction to modify the judgment had long expired.

---

[1] The original divorce decree states "IT IS ORDERED AND DECREED that KIM BLACKSON CLOGSTON's name is changed to Kim Clogston Blackson"

## STATEMENT REGARDING ORAL ARGUMENT

Appellee requests oral argument in this case because he believes it will aid the Court in making its determination as to the issues presented herein.

## ISSUES PRESENTED

Appellant states as his Point of Error Number One: "Whether the Trial Court Erred in Dismissing Petitioner's Motion to Enforce based on Respondent's assertion the Motion was barred by limitations of Tex.Fam.Code Ann §9.003(a) or §9.003(b)."

The issue is more properly stated as "Whether the Trial Court Erred in Dismissing Petitioner's Motion based on Respondent's assertion this was not an action to enforce but rather an action to modify the original divorce decree, that it is barred by limitations contained in Family Code §9.003, Tex. CPRC §16.003, Tex. CPRC §16.051 and that it is barred because the Court's plenary jurisdiction had long expired."

## STATEMENT OF FACTS

The Appellant and Appellee entered into an Agreed Final Decree of Divorce on October 18, 2006. Appellant was awarded "the website known as www.pfq.com except that both parties shall be entitled to utilize any unused domain name variation or unused e-mail address associated with the site." See Exhibit A for the home page of the website residing at www.pfq.com. Appellant was further awarded the business known as Physicians for Quality and the corporate entity PFQ Inc.

Appellant misstates the facts by alleging that Appellee "denied Appellant the ability to make the necessary changes." In fact, Appellant has continued to change the website at will since the divorce, most recently in response to Appellee's complaint that Appellant's most recent revision named Appellee as "Executive Director and Medical Director of Physicians for Quality" in violation of the provision in the divorce decree that "wife shall remove Curtis P. Clogston as an officer and/or agent of service"; Appellee was not able to make this change himself because Appellant, contrary to her attorney's statement in his brief, has exclusive control over the content of the website. See Exhibit B for the page residing at www.pfq.com/Malpractice.asp that Appellant removed from her website at Appellee's insistence.

Appellee has continued to register the domain name "www.pfq.com" and pay registration fees for the benefit of both parties since the divorce. He furthermore assisted Appellant to move her website to a different hosting server at her request, and this move deprived Appellee of any means of control over Appellant's website.

Appellant now apparently asks that the *domain* (not the *website*) www.pfq.com be transferred to her name. She was *not* given this right in the original decree.

## SUMMARY OF THE ARGUMENT

The trial court properly decided that Appellant's so-called Petition to Enforce was really an attempt to modify an eight-year-old divorce decree long after limitations had run and the court's plenary jurisdiction had expired. No harm has been done to Appellant by the *status quo*.

## ARGUMENTS AND AUTHORITIES

**1. This is not an action to enforce.** In the District Court, Petitioner asked the court to change the terms of a final judgment signed and filed on October 18, 2006. Despite the name given Petitioner's pleadings, a reading of the petition demonstrates that Petitioner was requesting a substantial change from the decree originally entered in 2006. Petitioner sought an order compelling the Respondent to execute documents to transfer a World Wide Web domain. This requirement was not in the original decree. The divorce decree made no provision concerning the domain name except in the provision that awards the website to the wife:

> W-13. The website known as www.pfq.com, except that both parties shall be entitled to utilize any unused domain name variation or unused email address associated with the site.

The 2006 judgment did not award "the World Wide Web domain" as requested in Petitioner's so-called Petition to Enforce in the District Court, and clearly contemplated the continued existence of the domain name because the judgment

9

provided that domain name variations and unused email addresses associated with www.pfq.com may be used by both parties.

**1a.** A *domain name* is,

> an identification string that defines a realm of administrative autonomy, authority or control on the Internet. Domain names are formed by the rules Domain Name System (DNS). Any name registered in the DNS is a domain name.

WIKIPEDIA, the free encyclopedia, en.wikipedia.org/wiki/domain_name (visited June 3, 2014); see also, ENCYCLOPEDIA BRITANNICA, http://www.britannica.com/EBchecked/topic/690679/Web-site.

**1b.** The domain name, or address, is property not divided by the divorce decree, and the divorce decree clearly contemplates that both parties have some rights remaining in it.

**2. Appellant's action is barred.**

> (a) A suit to enforce the division of tangible personal property in existence at the time of the decree of divorce or annulment must be filed before the second anniversary of the date the decree was signed . . . or the suit is barred.

Tex. Fam. Code §9.003(a).

> A suit to enforce the division of future property not in existence at the time of the original decree must be filed before the second anniversary of the date the right to the property matures or accrues or the decree becomes final, whichever date is later, or the suit is barred.

Tex. Fam. Code §9.003(b).

Except as provided by Sections 16.010, 16.0031, and 16.0045, a person must bring a suit for trespass for injury to the estate or to the property of another, conversion of personal property, taking or detaining the personal property of another, personal injury, forcible entry and detainer, and forcible detainer not later than two years after the day the cause of action accrues.

Tex. CPRC §16.003.

Every action for which there is no express limitations period, except an action for the recovery of real property, must be brought not later than four years after the day the cause of action accrues.

Tex. CPRC §16.051.

**2a.** The two-year limitations provision contained in Family Code §9.003 is applicable to all enforcement motions. *Morales v. Morales*, 195 S.W.3d 188 (Tex.App.-San Antonio, 2006, denied). Appellant's motion is also barred by Tex. CPRC §16.003(a) (two-year statute of limitation) [conversion of personal property, taking or detaining the personal property of another] and Tex. CPRC §16.051 (residual four-year statute of limitation).

**2b.** Appellant's action is also barred because the court no longer had jurisdiction to change the judgment under general principles of law. Appellant did not seek a new trial or appeal from the judgment within the time permitted by law and the court's plenary jurisdiction to modify the judgment had long expired.

**3.** Neither party is injured by the status quo that has existed for eight years. Both parties have rights to use certain attributes of the domain name as is provided in the divorce decree, and Appellant has exclusive control over her business's website. Appellant has no legal right to have the judgment changed and there is no need to change the judgment.

## CONCLUSION

It is clear from the preceding discussion that the District Court properly denied Appellant's motion and that no reversible error occurred.

## PRAYER FOR RELIEF

Appellee requests that this Honorable Court uphold the judgment of the Court below.

Appellant further requests any other relief to which he may be legally entitled.

Respectfully submitted,

Curtis P. Clogston
Email: cpc@pfq.com
*Pro se*

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of April, 2015, a true and correct copy of the foregoing brief was served via certified mail, return receipt requested, on David K. Sergi.

_____

Curtis P. Clogston

## CERTIFICATE OF COMPLIANCE

1.    This brief complies with the type-volume limitation of the Texas Rules of Appellate Procedure 9.4(i)(2)(A) because:

    i.    This brief contains <u>3544</u> words, including Exhibits.

2.    This brief complies with the typeface requirements of TEX.R.AP.P.9.4(e) because:

    i.    This brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14 pt. Times New Roman.

EXHIBIT A:
www.pfq.com
content before April
22, 2015



**Physicians For Quality**
**808 W. Bluebonnet Dr.**
**San Marcos, TX 78666**

**1-800-284-3627**

**Fax: 512-233-0642**

# Attorneys:

▶ Specialties

▶ Requesting Service

▶ Personal Injury

# Physicians:

▶ Registration

# Consumers:

▶ Avoid Malpractice

# General Info:

▶ Email Us

# Physicians For Quality





Medical Experts for Attorneys
*Physicians for Quality* is a networking agency to help attorneys, both plaintiff and defense, locate qualified, objective expert witnesses in medical malpractice, products liability, personal injury and other cases. More than 5,000 experts from around the country have registered with PFQ. PFQ is committed to fairness over bias. Highly qualified, objective medical professionals provide better analysis and make better witnesses than "hired guns."

Qualified Physicians Invited To Register
*Physicians for Quality* welcomes Board-Certified practicing physicians who do not advertise as expert witnesses. *Physicians for Quality* only accepts as experts those professionals who are committed to fairness and who are willing to testify for either patient or doctor, depending on which side of the case is meritorious. Duties include reviewing records, conferring with attorneys, and testifying, either by deposition or at trial or both.

Physicians For Quality

808 W. Bluebonnet Dr.          San Marcos, TX 78666          1-800-284-3627

14

EXHIBIT A: www.pfq.com/Malpractice.asp content prior to April 22, 2015 [highlights added]



**Physicians For Quality**
**808 W. Bluebonnet Dr.**
**San Marcos, TX 78666**

**1-800-284-3627**

**Fax: 512-233-0642**

Courage need not be reserved for combat, but expressed In the *fulfillment* to daily business *Medical Negligence*

**Your Health And The Law**
**How To Avoid Being A Victim Of Malpractice**

# Attorneys:

▶Specialties

▶Requesting Service

▶Personal Injury

# Physicians:

▶Registration

# Consumers:

▶Avoid Malpractice

# General Info:

▶Email Us
▶Back To Home Page

Each year, in a city of a million people, 27 patients will be killed by negligence committed in a hospital setting. Three will be permanently and totally disabled, and 100 more will suffer some other injury. And of course, many, many more receive ineffective care - that which doesn't produce harm, but doesn't help either. Will you, or somebody you love, be the next victim of medical negligence?

It is not possible to completely avoid medical malpractice. Some occurs randomly, but most is the result of systematic carelessness, incompetence, or indifference. While you cannot eliminate the risk entirely, you can avoid high-risk practitioners.

There are two strategies that will lower your risk: know your doctor, and know your illness. The former is more difficult than the latter, because reliable information about doctors is hard to get. There is a national database of claims and disciplinary action taken against doctors, but it is confidential by law. County medical societies have referral services, but they make little or no effort to screen out bad doctors and they won't tell you what they know about a doctor as long as the doctor still has a license.

You can ask your friends if they know anything about your doctor, but unless your friends know quite a bit about medicine, the answers you get will be heavily weighted towards bedside manner and mostly irrelevant when it comes to evaluating the doctor's skill, judgment and commitment.

You can ask a nurse, preferably one who works for a hospital rather than one who works for a doctor's office. Most of them know what goes on behind the scenes and, if they are promised confidentiality, may tell you what they know.

The second strategy is to know your illness. Ask your doctor for any pamphlets or other patient information he or she may have available. If your doctor doesn't have anything available (possibly a bad sign), can he or she tell you where to get such information?

15

Go to the public library. Read about your condition and the treatment your doctor is suggesting. You will probably need to buy an inexpensive medical dictionary to help you in your research.

While you are at the library, look up national organizations (American Heart Association, American Cancer Society, etc.) that are concerned with your illness. (If you have obtained any pamphlets about your illness, look for the names of the organizations that published them.) Write or call these organizations and ask them for information about your disease and any specific treatments you are concerned about.

If you feel comfortable with medical terminology, you may try a medical library as well. The best medical libraries are located at medical schools. If you do go to a medical school, go also to the medical bookstore and purchase a copy of the Merck Manual, which is dense with medical terminology but gives very concise information about a number of diseases and treatments.

As you do your research, try to find out if there are any medical centers near you that specialize in your illness. If so, and you are able, go to such a center for a second opinion. If that option is not available to you, try to get a second opinion from another doctor in your community. Finding a local doctor for a second opinion who isn't friends with your doctor may be difficult, however. If you are a member of a health maintenance organization (HMO), it will be nearly impossible to get an objective second opinion unless you are willing to pay for it yourself. Similarly, if you were injured at work and are required to go to a "company doctor", getting a second opinion will often require paying for it out of your own pocket.

After you've done your research and hopefully obtained a second opinion, talk to your doctor again. Ask about the treatments your doctor is recommending and about alternatives you have read or heard about. Ask if your doctor sees patients with your condition often, to gauge his or her experience in treating the condition. Ask if your doctor has done research or published papers about your illness. If so, ask your doctor if you can have a reprint to read - your doctor should be complimented by your request. Whenever you talk to your doctor or other health care provider, take notes, date them and save them. They may be needed in the future if things go wrong.

If this all sounds like a lot of work, consider the benefits. You will have more confidence in your doctor and more control over your own fate. You will have learned a lot about your illness and the things you can do yourself to minimize its impact (such as going on a special diet, quitting smoking, etc.).

Avoiding malpractice requires that you take responsibility for your own outcome and not just rely on your doctor's judgment. Doctors are taught in medical school that patients become dependent and childlike when they are ill and depend on their doctors unreasonably. Some doctors will even take advantage of this tendency to promote themselves. You must avoid this dependency - only by being in control of your own health care will you avoid being a victim and assure yourself of getting the best treatment possible.

The author is a medical malpractice attorney in San Antonio, Texas, and an emergency physician. He is also the Executive Director and Medical Director of Physicians for Quality, a national network of physicians who review medical malpractice cases for both patients and doctors. He has worked with the U.S. Food and Drug Administration in

Washington, D.C., and with the Texas Attorney General's office to assist in the prosecution of health care fraud. This column, like the author's law practice, is committed to improving health care through the law and through public information.

Curtis P. Clogston, J.D. M.D.